IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST MACHADO,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ANTHONY KANE, Warden, Correctional Training Facility, Soledad,<br><br>　　　　Respondent.<br>　　　　　　　　　　　　　　　　　／ | No. C 05-01632 WHA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Ernest Machado seeks an order effectively granting him parole from state prison, on grounds that the Board of Prison Terms denied him due process when it decided otherwise. This order also necessarily reviews the constitutionality of the Los Angeles Superior Court's ruling to uphold the Board's decision. Petitioner had a liberty interest in parole protected by the Due Process Clause. The rulings of the Board and Superior Court met the Constitution's minimal standards. Petitioner's request for a writ of habeas corpus therefore is **DENIED**.

## STATEMENT

Petitioner and an acquaintance burst into a third man's home in 1981, intending to rob him of cocaine. While the acquaintance ransacked the apartment, petitioner shot the resident in the back, killing him. When a second resident returned home, he was kicked unconscious by petitioner's accomplice. A state-court jury convicted petitioner of using a gun to commit first-

degree murder.  His sentence of twenty-six years to life allows parole (Pet. 2 & Exh. B at 1 (Life Prisoner Evaluation Report, Subsequent Parole Consideration Hearing, Sept. 2003 Calendar at 1)).  The earliest date on which he could have qualified for parole was July 12, 1996 (Pet., Exh. A at 3 (Subsequent Parole Consideration Hearing, Board of Prison Terms, April 8, 2004)).  Petitioner was denied parole five times before the 2004 rejection he now challenges.

At the 2004 hearing, the California Board of Prison Terms put off setting a parole date for at least one year.  It found that he would pose "an unreasonable risk of danger to society or threat to public safety if released from prison."  It based that evaluation on the following conclusions:

1. The offense was carried out in an especially cruel and callous manner.

2. There were multiple victims.

3. The offense was carried out in a dispassionate and calculated manner that demonstrated an exceptionally callous disregard for another human being and was consistent with an execution-style murder.

4. At least one of the victims was abused.

5. The motive for the crime was inexplicable.

6. Petitioner was involved in previous crime that could have resulted in injury of another person.

7. Petitioner had an "escalating pattern of criminal conduct and a history of unstable or tumultuous relationships, especially gang-related relationships."  He used illegal drugs.

8. Petitioner failed previous grants of probation and "to profit from society's previous attempts to correct his criminality."

9. Petitioner did not demonstrate enough compassion and remorse toward the victim.

10. Petitioner continued to be "unpredictable and therefore a threat."

(Pet., Exh. A at 87–91).

2

1  The Los Angeles Superior Court denied Mr. Machado's petition for a writ of habeas
2  corpus.  That application was based on the same claims asserted in the instant action.  The
3  Superior Court upheld the parole decision because there was "some evidence" to support the
4  Board's findings that the "commitment offense was especially callous in that multiple victims
5  were attacked, injured of killed in the same incident."  The court also found that the decision
6  was bolstered by evidence that the offense was "more aggravated or violent than the minimum
7  necessary to sustain a conviction for . . . murder," that petitioner had an escalating pattern of
8  criminal conduct and violence, and that he had an unstable "social history."  The Superior Court
9  disagreed with the Board on several issues, however.  It found no evidence to support the
10 Board's findings that any victim was abused, that the offense was dispassionate and calculated,
11 that it exhibited an "exceptionally callous disregard for human suffering," or that it was
12 committed for an "inexplicable or very trivial motive."  *In re Machado*, No. BH002875, slip op.
13 at 1–2 (Super. Ct. Nov. 2, 2004).  The state court of appeal and Supreme Court denied Mr.
14 Machado's petitions, both without issuing an opinion.  *In re Machado*, No. B179167 (Cal. Ct.
15 App. Nov. 24, 2004) and No. S129635 (Cal. Sup. Ct. Feb. 16, 2005).

## ANALYSIS

17 Persons in custody pursuant to a state-court judgment may be freed by a district court if
18 they are held in violation of the Constitution, laws or treaties of the United States.  They must,
19 however, exhaust their remedies in state court, or demonstrate that such appeals either are
20 unavailable or ineffective.  If petitioner advances a claim that was decided in state court on the
21 merits, the petitioner must establish that either (1) the state court decision was *contrary to*
22 clearly established federal law, as determined by the Supreme Court, (2) involved an
23 *unreasonable application of* clearly established federal law, as determined by the Supreme
24 Court, or (3) was based on an *unreasonable determination of the facts* in light of the evidence
25 presented in state court.  28 U.S.C. 2254(a), (b)(1), (d) (emphasis added).
26 Congress enacted these habeas standards in 1996 as part of the Antiterrorism and
27 Effective Death Penalty Act.  They were designed to reduce federal courts' review of state-court

3

criminal judgments. The standards did so partly by restricting the sources of constitutional law in habeas cases to those rules set down clearly by the Supreme Court.

Under the Act, a state court's decision can be overruled as "contrary to" federal law if it fails to apply the correct Supreme Court authority or if it applies such authority incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision. A state court can also be trumped if it used federal law unreasonably. There are two ways it may so err: by applying the governing Supreme Court rule to a new set of facts in a way that is objectively unreasonable, or by extending or failing to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. Clearly established federal law exists only in the holdings, but not in the dicta, of Supreme Court decisions. *Williams v. Taylor*, 529 U.S. 362, 405–12 (2000). The applicable law is also limited to those decisions handed down before the state court issued its decision. *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Determinations of factual issues by a state court must be presumed correct. They can only be rebutted only by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. When evaluating a claim brought under the Due Process Clause, there are two steps: first, is there any protected interest *at all* and, second, if there is a protected interest, did the state provide the requisite procedural protections.

**1.     Existence of a Protected Liberty Interest.**

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause. The right was created by the "expectancy of release provided in [the Nebraska parole statute.]" That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts. *Id.* at 11–12. The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987). There it held that a similar liberty interest was created even though the parole board had great discretion. *Id.* at 381.

4

*Greenholtz* was followed by several decisions that transplanted its methodology from the arena of parole decisions to that of prison conditions. Several times, the Supreme Court held that due-process rights had been violated when prison officials failed to apply mandated procedural protections when disciplining prisoners. *See, e.g.*, *Hewitt v. Helms*, 459 U.S. 460, 470–71 (1983).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court reconsidered how to determine whether prison regulations created protected liberty interests. A prisoner in Hawaii asserted that he had a protected interest in being free from disciplinary segregation from the rest of the prisoners. A prison regulation to give the inmate a right not to be found guilty of the disciplinary infraction unless he was allowed to call witnesses. The Ninth Circuit held there was a protected liberty interest. The Supreme Court reversed, rejecting the analytical approach used in the decisional descendants of *Greenholtz*. The Supreme Court said that due-process rights were not established solely by mandatory language in a statute or regulation. Instead, they also were "generally limited to freedom from restraint which . . . impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 475–77, 484.

*Greenholtz* and *Allen*, not *Sandin*, nevertheless provide the controlling analytical method in the instant case. *Sandin* only "dealt with internal prison disciplinary regulations, and does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*." *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). It therefore does not apply here. Prison conditions are qualitatively different than whether or not the inmate is set free. Parole necessarily implicates liberty. Prison discipline does not.

The applicability of *Greenholtz* and *Allen* to parole cases was not diminished by *Wilkinson v. Austin*, __ U.S. __, 125 S.Ct. 2384 (2005). There, the Court stated that "*Sandin* abrogated *Greenholtz*'s and *Hewitt*'s methodology for establishing the liberty interest." *Austin* was issued after the state habeas decision at issue here, so did not constitute clearly established federal law at the time of the Superior Court's order. *See Andrade*, 538 U.S. at 71–72. Furthermore, *Austin*'s statement was merely dicta. It was applicable only to decisions about

5

1  conditions of confinement, not to parole. *Austin* considered regulations used to determine
2  whether a state inmate would be placed in a high-security prison. First, the Court found that
3  there was a protected liberty interest. In that analysis, it never mentioned *Greenholtz*. It then
4  considered whether the state's procedures provided due process. It was only at that point that it
5  referred to the methodology of *Greenholtz*. The Court stated that "[a]lthough *Sandin* abrogated
6  *Greenholtz*'s and *Hewitt*'s methodology for establishing the liberty interest, these cases remain
7  instructive for their discussion of the appropriate level of procedural safeguards." *Austin*, 125
8  S.Ct. at 2397. *Greenholtz* only got traction in *Austin* when the Court examined the proper
9  procedures. The comment about *Greenholtz*'s methodology had no impact, however, on the
10 holding that a liberty interest existed. *Austin* therefore did not weaken *Greenholtz*'s control
11 over the instant petition. *Cf. Williams*, 529 U.S. at 412 (clearly established federal law exists
12 only in Supreme Court holdings, not its dicta).

13       This order now applies these rules to determine whether California created a liberty
14 interest in parole for petitioner that was protected by the Due Process Clause. Under California
15 law, the Board of Prison Terms "*shall* set a release date unless it determines that the gravity of
16 the current convicted offense . . . is such that consideration of the public safety requires a more
17 lengthy period of incarceration." Cal. Penal Code § 3041(b) (emphasis added). This language
18 created a protected liberty interest for every inmate eligible for parole. *Biggs*, 334 F.3d 910 at
19 914 (applying the mandatory-language test of *Greenholtz* and *Allen* in a Section 2254 case).[1]

20       Respondent summarily rejects the notion that petitioner had a federally protected liberty
21 interest in parole under Section 3041, citing for support *In re Dannenberg*, 34 Cal.4th 1061
22 (2005). Section 2254 limits the sources of habeas law to United States Supreme Court holdings.
23 The only way, therefore, that *Dannenberg* could have altered the binding authority of *Biggs*
24 were if it construed Section 3041 so that it no longer created an "expectancy of release,"
25 *Greenholtz*, 442 U.S. at 12. *Dannenberg* did no such thing. In fact, it strongly supported
26 petitioner. *First*, it stated that granting parole is mandatory, qualified only by the words

---

28    [1] Although Section 3041 was amended in 2005, the revision did not apply to petitioner's Board hearing or his Superior Court petition, which both happened in 2004. Furthermore, the amendment made no practical change to consideration of parole issues such as those raised by petitioner.

6

"normally" (a panel of the Board "shall normally set a parole release date") and "unless" ("The panel or board . . . shall set a release date unless it determines that the gravity of the offense," etc. "is such that . . . public safety requires a more lengthy period of incarceration"). Such mandatory language is exactly the type of language that was held to create a protected liberty interest in parole in *Greenholtz* and *Allen*. *Second*, *Dannenberg* repeatedly acknowledged that inmates had "constitutional" due process rights in parole release. It held that such a right was honored if "the Board provides the requisite procedural rights, applies relevant standards, and renders a decision supported by 'some evidence.' " It stated that inmates had a "constitutionally protected expectation of parole" and "an expectancy in parole." *Id.* at 1071, 1094, 1095 & n.16. In quoting the "some evidence" language, the California Supreme Court cited one of its previous decisions, *In re Rosenkrantz*. That decision held that the judiciary was authorized to review parole decisions to ensure that they "comport[] with the requirements of due process of law." 29 Cal.4th 616, 658 (2002). In summary, *Dannenberg* supports the existence of a constitutional right to parole in California. Respondent's argument has no merit.

### 2. Requisite Due-Process Protections.

Having found that petitioner had a protected liberty interest in parole, this order turns to the second step in the due-process analysis: whether the state gave petitioner the process of law due to him. When an inmate has a protected liberty interest in parole, "some evidence" must support the parole board's decision not to release the prisoner. *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir. 2002) (holding that *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985), which required some evidence to support revocation of inmate's good-time credits, applies to decisions to deny parole reviewed in a Section 2254 habeas petition). *Biggs* held that the "some evidence" standard was satisfied by the Board of Prison Terms's consideration of the gravity of the petitioner's offense, which exhibited a callous disregard for life. *Biggs*, 334 F.3d at 916. The Ninth Circuit later held that the "some evidence" standard was satisfied by reference to undisputed facts of the offense and psychiatric reports about the would-be parolee. *Rosas v. Nielsen*, 428 F.3d 1229, 1232–33 (9th Cir. 2005).

Although the Board gave numerous reasons for its decision, the only ones remaining for consideration by this Court are those that were not rejected by the Superior Court. It only takes one good reason, *i.e.*, one supported by "some evidence," to uphold the decisions of the Superior Court and Board of Prison Terms.[2]

In denying Mr. Machado's state petition, the Superior Court held that there was "some evidence" that the offense was "especially callous in that multiple victims were attacked, injured or killed in the same incident." This circumstance "tend[s] to indicate unsuitability for parole" under California regulations. Cal. Code Regs. Title 15, § 2402(a), (c)(1)(A).

Petitioner was convicted on a felony-murder theory. The underlying felony was robbery. Petitioner concedes that, during the robbery, his partner-in-crime kicked the roommate, rendering him unconscious. This concession is supported by documentary evidence (the 2003 Life Prisoner Evaluation Report) and petitioner's own testimony at the hearing. There is therefore "some evidence" that multiple victims were attacked, injured or killed.[3]

Petitioner contends that this evidence is insufficient to deny him parole because he was not present when his codefendant struck the roommate and "did not plan, condone, or anticipate the act." Petitioner is changing his story too late in the game. At the parole hearing, he stated that he was "standing approximately no more than 10 feet away" from the roommate when he was struck. He also said that he saw his codefendant lure the roommate into the apartment to attack him, and witnessed the actual attack (Pet., Exh. A at 15). Whether petitioner planned, condoned or anticipated the specific act is irrelevant. Petitioner armed himself with a gun, planned a home-invasion robbery with a partner and executed that plan. He is responsible for all the reasonably foreseeable acts of violence during the crime. Petitioner's codefendant was convicted of first-degree murder. He thereby was held responsible for petitioner pulling the trigger. So too is petitioner responsible for his partner's brutality.

---

[2] Plaintiff does not allege that his habeas proceeding in state court suffered from any constitutional defects independent of those allegedly committed by the Board.

[3] Petitioner makes no claim that this conclusions rested upon unreliable evidence. There is therefore no occasion here to consider the rule stated in *McQuillion* and *Biggs* that the evidence must have "some indicia of reliability."

8

Petitioner claims that the Board impermissibly based its decision on unchangeable facts of his offense. "If parole can continue to be denied on the basis of the unchangeable facts of a 'run-of-the-mill' first degree felony murder and a non-violent past after the . . . perpetrator has served nine years in excess of his minimum prison term and been denied parole on this basis six times, he can ***never*** parole" (Pet. 12).[4] Petitioner bases his argument on dicta in *Biggs* that "[o]ver time . . . should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment . . . could result in a due process violation." 334 F.3d at 916–17.

This Court cannot rely upon such a thin reed to overturn, in a habeas action, a state-court ruling. However wise *Biggs*' statement was, it is Ninth Circuit dicta without apparent foundation in any Supreme Court holding. The passage from *Biggs* therefore was not clearly established federal law, as determined by the Supreme Court, and cannot be used to overturn the state-court ruling here.

Furthermore, the expectancy in parole created by Section 3041 is not absolute. As noted in *Greenholtz*, *Allen*, *McQuillion* and *Biggs*, there is no absolute right to release on parole. Any such liberty interest is created only by the "expectancy" created by state statutes and regulations. They also determine the scope of that expectancy. In California, the statute negates any expectancy when the Board "determines that the *gravity of the current convicted offense or offenses* . . . is such that consideration of the public safety requires a more lengthy period of incarceration." Section 3041(b) (emphasis added). Petitioner therefore had a liberty interest in parole *only if* his offense did not make him a threat. In the instant case, the Board determined that the offense did evidence a continuing threat. Reliance on the unchanging facts of his offense therefore posed no constitutional difficulty.

---

[4] In fact, petitioner was convicted of violent crime before his murder verdict. He was convicted of shooting into an inhabited dwelling in 1973 (2003 Life Prisoner Evaluation Report at 2).

9

1    In any case, petitioner has not demonstrated that he was repeatedly denied parole based
2 upon unchangeable facts. He submitted no records indicating reasons why he was denied parole
3 in prior years. There is, however, evidence of other reasons to have denied him parole. In
4 2001, the Board rejected setting a release date and advised him to upgrade his vocational
5 qualifications. He did not. He still has not. The Board cited this as a concern cutting against
6 parole. Obviously, his vocational training is not an unchangeable fact. Improving his work
7 skills was entirely within petitioner's power. He failed to do so (Answer, Exh. 4 (Life Prisoner
8 Evaluation Report , Subsequent Parole Consideration Hearing, Sept. 2002 Calendar); Pet., Exh.
9 A at 90–91).

10   Petitioner also claims that the Board failed to state a rational nexus between the factors
11 it cited in support of its decision and the parole risk posed by petitioner. He claims that this
12 failure proves that the Board's decision was arbitrary and therefore violated of due process.
13 There is no requirement under clearly established federal law that the Board state such a nexus.
14 As noted, *Biggs* held that the "some evidence" standard was satisfied by the parole board's
15 consideration of the gravity of the petitioner's offense alone. *Biggs*, 334 F.3d at 916.
16 Furthermore, there is nothing arbitrary in the notion that someone involved in attacks on more
17 than one person might pose a unacceptable risk to society. That is the conclusion reached here
18 by the Board, which stated that "[u]ntil enough progress is made, the prisoner continues to be
19 unpredictable and therefore a threat to others." As noted above, the Board expressed
20 disappointment that he had not been certified in a vocational skill (Pet., Exh. A at 90–91). Also,
21 his misconduct by no means ended with the murder he committed, so it is disingenuous for him
22 to pretend that he was deemed unsuitable for law-abiding society solely on the basis of an act he
23 committed twenty-three years earlier. Since being in prison, he possessed a hypodermic needle,
24 committed theft, trafficked in heroin and was an accessory to bigamy.[5]

25   Petitioner argued in his traverse that the state should be required to satisfy an evidentiary
26 burden higher than the "some evidence" standard. This contention amounts to nothing more

---

[5] The most recent of these violations, all adjudicated within the prison disciplinary system, occurred in 1993.

10

than a plea to disregard the binding authority of *McQuillion* — something we cannot do.  Also, he is foreclosed from making it because he did not raise it in the petition.  In fact, he argued throughout the petition that various Board decisions did not comport with the "some evidence," standard, thus implicitly accepting it as governing the instant case.  Bringing up this argument now blatantly sandbags respondent.

## CONCLUSION

Petitioner is not being held in violation of the Constitution.  The denial of parole by the Board of Prison Terms was supported by some evidence and did not otherwise violate petitioner's right to due process of law.  The Superior Court's decision was consistent with clearly established federal law, as determined by the Supreme Court.  The request for a writ of habeas corpus is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated:  February 22, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE